# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

AARON KAREEM MOORE,

    Petitioner,

v.

WARDEN J.V. FLOURNOY,

    Respondent.

CIVIL ACTION NO.: 2:16-cv-144

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Aaron Kareem Moore ("Moore"), who is currently housed at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response, (doc. 9), and Moore filed a Reply, (doc. 10). For the reasons which follow, I **RECOMMEND** that the Court **DISMISS without prejudice** Moore's Petition, **CLOSE** this case, and **DENY** Moore *in forma pauperis* status on appeal.

## BACKGROUND

On August 14, 1997, the United States District Court for the Eastern District of Tennessee sentenced Moore to a 188-month term of imprisonment for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Doc. 9, p. 3; Doc. 9-1, pp. 21–22.) During this time, Tennessee state authorities had primary jurisdiction of Moore for various state crimes, but Moore was in federal custody pursuant to a writ of habeas corpus *ad prosequendum*. (Doc. 9-1, pp. 3, 29.) After he was sentenced in federal court, Moore was returned to state authorities, and the federal judgment was filed as a detainer. (Id. at p. 3.)

On September 18, 1997, the State of Tennessee sentenced Moore to a 31-year term of confinement for parole violations. (Id. at pp. 3–4, 59.) Moore completed his state sentence on April 25, 2011, and was released to the custody of federal authorities based on the previously-lodged federal detainer to commence his 188-month sentence. (Id. at p. 4.) Moore's federal judgment was silent on the issue of whether his sentence was to be served concurrently or consecutively to his state sentence. Thus, pursuant to 18 U.S.C. § 3584(a), Moore's term ran consecutively. (Id. at pp. 4, 39.)

The Bureau of Prisons ("BOP") conducted a review pursuant to Barden v. Keohane, 921 F.3d 476 (3rd Cir. 1990), to determine whether Moore could receive a *nunc pro tunc* concurrent designation. (Id. at pp. 4, 48–51.) On March 5, 2012, the BOP contacted the United States District Court for the Eastern District of Tennessee regarding its position on the concurrent designation of Moore's sentence. (Id. at pp. 31, 33–34, 59–60.) The Court did not respond, and the BOP ultimately determined that a *nunc pro tunc* designation was not warranted. (Id. at pp. 5–6, 31.)

In his Petition, Moore contends that his sentences should have been served concurrently, and even if they were not, his federal sentence should have been executed first. (Doc. 1, p. 3.) Respondent maintains that the BOP properly reviewed and denied Moore's request for a *nunc pro tunc* designation. (Doc. 9, pp. 7–8.) However, Respondent asserts that the Court should not review the relative merits of Moore's Petition because Moore did not properly exhaust his available administrative remedies prior to filing this Petition. (Id. at pp. 5–7.)

**DISCUSSION**

I. **Whether Moore Exhausted his Administrative Remedies**

    A. **Legal Requirements for Exhaustion**

The Eleventh Circuit Court of Appeals has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). However, the normal pleading rules still apply, and dismissal is appropriate when an affirmative defense appears on the face of a complaint—making it clear that a prisoner cannot state a claim for relief. Id. at 214–15. Thus, when a party admits in his complaint or petition that he has not exhausted the grievance process, dismissal is warranted. See Okpala v. Drew, 248 F. App'x 72 (11th Cir. 2007); Cole v. Ellis, No. 5:10-CV-00316-RS-GRJ, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); Rashid v. Liberty Cty. Jail, CV410-092, 2010 WL 3239241, at *1 n.1 (S.D. Ga. May 3, 2010) ("Nothing in Jones . . . forbids the Court from dismissing a complaint pursuant to [42 U.S.C.] § 1997e(a) if it is clear from the face of the complaint that the prisoner has not exhausted all administrative remedies available to him.").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[1]

The United States Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

---

[1] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

4

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

B. **Standard of Review for Exhaustion**

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies.[2] First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has

---

[2] Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a Section 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683-JFA-TER, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting Section 2241's exhaustion requirements and Turner's application of exhaustion standards to a Section 2241 petition).

not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C. Analysis of Moore's Efforts at Exhaustion

In his Petition, Moore states that he "has exhausted his administrative remedies and has no other recourse but to seek the prompt aid of this Court." (Doc. 1, p. 2.) However, Respondent argues that Plaintiff did not, in fact, properly exhaust the prison's available administrative remedies prior to filing this Petition. (Doc. 9, pp. 5–7.) In his Reply, Moore claims that he did properly exhaust because the reply he received to his most recent administrative remedy request stated that he "exhausted [his] [resources at the] institution level concerning [his] NUNC PRO TUNC." (Doc. 10, p. 1.) Additionally, Moore argues that administrative remedies were unavailable because "the Bureau of Prisons division at Grand Prairie/Designation Computation Center is the sole authority in resolving jail credit issues and as indicated that division had already denied Moore's request from as early as 2002." (Id. at p.2.) In light of these differences, the Court will proceed to the second Turner step and make specific factual findings pertinent to the exhaustion question.

The BOP has established an administrative remedy procedure through which an inmate may seek review of a grievance related to any aspect of his imprisonment. 28 C.F.R. § 542, *et seq*. The Administrative Remedy Program applies to all inmates incarcerated in penal institutions operated by the BOP. 28 C.F.R. § 542.10(b). Under the applicable Regulations, an inmate must generally first seek to resolve an issue of concern informally by presenting the issue to correctional staff. 28 C.F.R. § 542.13(a). If this does not resolve the matter, an inmate must submit a formal written administrative remedy request within twenty calendar days of the incident giving rise to the grievance. 28 C.F.R. § 542.14(a). Administrative Remedy Form BP-229(13) is the form to be utilized at the institution level. This form is commonly referred to as a "BP-9" form. (Doc. 9-1, p. 6.) If unsatisfied with the Warden's response to the BP-9 administrative remedy request, an inmate may take an initial appeal to the appropriate Regional Director within twenty days of when the Warden signed the response. 28 C.F.R. § 542.15(a). Administrative Remedy Form BP-230(13) is the form to be utilized at the regional level. This form is commonly referred to as a "BP-10" form. (Doc. 9-1, p. 7.) If unsatisfied with the Regional Director's response, an inmate may take a final appeal to the BOP's Office of General Counsel in Washington, D.C., within thirty days of when the Regional Director signed the response. Id. Appeal to the BOP's Office of General Counsel is the final step in the BOP's administrative remedy process. Administrative Remedy Form BP-231(13) is the form to be utilized at the final level. This form is commonly referred to as a "BP-11" form. (Id.)

The evidence before the Court reveals that Moore never completed the administrative remedy process by filing a BP-11 form with the BOP's Office of General Counsel. (Doc. 9-1, pp. 8, 63–64.) Moore filed a total of three administrative remedies seeking a *nunc pro tunc* designation. (Doc. 9-1, p. 8.) In 2012, he filed a BP-9 and a BP-10 but did not complete the final step by appealing to the Office of General Counsel. (Doc. 9-1, pp. 8, 63–64.) In 2016, Moore again filed a BP-9 but did not appeal his request with either the Regional Office or the Office of General Counsel. (Id.) In fact, the administrative remedy response Moore cites to in his Reply is a response to this 2016 BP-9 filing. (Doc. 10, p.4.) While it is true that this document states that Moore has "exhausted [his] resources at the institution level," the paragraph immediately after directs Moore to appeal the response to the Regional Director if he is dissatisfied. (Id.) Moore did not do so, and he gives no indication that he was prevented or otherwise unable to do so. Instead, Moore indicates in his Response that he did not file an appeal because doing so would simply have been "beating a dead horse." (Doc. 10, p. 2.) However, a prisoner must complete each stage of the grievance process in order to properly exhaust his administrative remedies. Bryant, 530 F.3d at 1378. Additionally, the fact that Moore was able to file a BP-10 in 2012 indicates that the appeal process was available and known to Moore.[3] Thus, it is apparent that Moore did not properly exhaust his available administrative remedies prior to filing this Petition. Consequently, the Court should **DISMISS** Moore's Petition.

---

[3] The United States Supreme Court rejected a "special circumstances" exception to exhaustion in Ross v. Blake, ___ U.S. ___, 136 S. Ct. 1850, 1856–57 (June 6, 2016). The Court, however, reiterated that a prisoner need only exhaust those remedies which were available to him. ___ U.S. ___, 136 S. Ct. at 1858 ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.") The Court recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. Here, even accepting Moore's allegations as true, he has not shown that the administrative remedies at FCI Jesup were unavailable to him as the Court contemplated in Ross. Moreover, under the second Turner step, even if Moore had sufficiently alleged unavailability, the Court finds that Respondent's account of the availability of remedies more credible than Moore's account.

## II.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Moore leave to appeal *in forma pauperis*. Though Moore has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Moore's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS without prejudice**, Moore's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Moore leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Moore and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 1st day of May, 2017.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA